UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM IRA BOS, Jr.,

                           Petitioner,                  Case No. 2:19-cv-13275
                                                             Hon. Denise Page Hood

v.

ROBERT VASHAW,

                           Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF
HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY,
AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

William Ira Bos, Jr., filed this habeas case under 28 U.S.C. § 2254. Petitioner

pled no contest in the Allegan Circuit Court to two counts of first-degree criminal

sexual conduct, MICH. COMP. LAWS § 750.520b(1)(a), and one count of child

sexually abusive material, MICH. COMP. LAWS § 750.145c(2). He was sentenced

to 25 to 50 years for the sexual misconduct convictions and 25 to 40 years for the

child abusive material conviction.

Petitioner claims his was plea was involuntarily because he was placed on

"mind altering" medications while held in jail and because he was not informed that

he would be prohibited from contacting the victim or her mother while in prison.

Because the claims are without merit, the court will deny the petition. The court will also deny a certificate of appealability and deny leave to appeal in forma pauperis.

## I. Background

Petitioner was charged with sexually molested his young stepdaughter. The victim told investigators that Petitioner penetrated her vagina with his penis and finger. Her allegations were corroborated when DNA analysis revealed Petitioner's semen on the victim's robe. Investigators also found a photograph on Petitioner's phone of the victim dressed only in an open rope with her legs spread apart, displaying her genitals. The geographical data on the photograph indicated that it was taken while the victim was at Petitioner's home. (ECF Nos. 9-6, 9-7. 9-12, PageID.379-381.)

Petitioner pled no contest. At the plea hearing, the trial court informed Petitioner that his plea of no contest would be treated exactly like a plea of guilty, and for sentencing purposes, "I'll be treating you as though you had been found guilty." (ECF No. 9-12, PageID.376.)  Petitioner indicated his understanding. (Id.)

Petitioner was informed of the two charges to which he was pleading no contest. He was informed that there was a sentencing agreement that his minimum sentence would not exceed 25 years. He was advised that four other counts were being dismissed. Petitioner indicated his understanding. (Id., PageID.377.)

Petitioner indicated his understanding that if he plead no contest, there would be no trial of any kind. (Id., PageID.378.) The court advised Petitioner of all the trial rights he would be waiving by entering his plea, and Petitioner indicated his understanding and agreement to each one. (Id.) Petitioner agreed that he would be giving up any claim that his plea was the result of any promises or threats that were not disclosed on the plea record. (Id., PageID.378-379.) He also agreed that that it was his own free choice to plead no contest. (Id., PageID.379.)

Petitioner denied that anyone had threatened him or promised him anything not on the record to obtain his plea. (Id.) Petitioner indicated that it was his own free choice to plead no contest. (Id.) The trial court used the police report to establish a factual basis for the plea. (Id., PageID.379-381.) The court found that Petitioner's plea was made knowingly, voluntarily, and accurately. (Id., PageID.383.)

At the sentencing hearing, Petitioner did not express any surprise that he was going to be sentenced, nor did he make any claim regarding the voluntariness of his plea. (ECF No. 9-13.) Petitioner acknowledged that his counsel had reviewed the presentence information report with him at the jail on the previous day. (Id., PageID.393.) Petitioner made no statement when he was given an opportunity to address the court prior to sentence. (Id., PageID.404.) The court sentenced Petitioner under the plea agreement to 25 to 50 years for the sexual misconduct conviction and 25 to 40 years for the sexually abusive material conviction. (Id., PageID.406.)

Relevant to his claims, at the close of the sentencing hearing, the court ordered that Petitioner would have no access to JPay (a system used for prisoners to contact people outside of prison) until the victim was twenty-one years old, and that "as far as this Court's ability to order this, you are also to have no access to social media or email on the internet that may be provided separately by the prison." (Id.) The judgment of sentence also prohibited Petitioner from having contact with the victim or the victim's mother. (Id., PageID.407.)

Following sentencing, Petitioner requested and was appointed appellate counsel, who filed a motion to withdraw the plea. Petitioner claimed that his plea was involuntarily entered because of medications administered to him at the jail. (ECF No. 9-14.)

The trial court held an evidentiary hearing on the claim. Petitioner testified that he was held in jail prior to the plea proceeding. (ECF 9-15, PageID.428.) He testified that he was given Prozac and Seroquel by the jail on the advice of another inmate who told him that it would help him sleep. ECF 9-15, PageID.429-430.) Petitioner testified that these medications made him feel "confusion, sleepiness, drowsiness. Like, just slow thought processes." (Id., PageID.431.) He stated that he had difficulty understanding his attorney. (Id.) Petitioner claimed that "I was just confused as to, what the no contest meant. I didn't understand." (Id., PageID.432.)

Petitioner testified that he was taken off all medications once he was in prison, and he now denied that he was guilty of any of the offenses. (Id., PageID.433.)

On cross-examination, Petitioner conceded that during an October 12th phone call with his mother from jail, Petitioner said, "I'm going to plead on the 25th, they can pay my bills for the rest of my life, while I'm in prison." (Id., PageID.435.) Petitioner made a second statement to his mother confirming his understanding that he would be going to prison. (Id.) Petitioner acknowledged his signature on a written copy of his pela agreement which included the sentencing agreement. (Id., PageID.435-436.)

Petitioner testified that he did not remember telling either of his trial attorneys that he was confused about the plea agreement. (Id., PageID.438.) He confirmed that he did not tell his counsel that he was confused during plea hearing. (Id., PageID.439.) Petitioner admitted that he first told his attorney that he did not want to go along with the plea when he heard about the no contact order that was added at the sentencing hearing. (Id., PageID.439.) He told his attorney to withdraw the plea on that basis. (Id., PageID.442-443.) Petitioner objected to the condition that he could not have contact with the victim's mother and his understanding that he would be prohibited from using JPay. (Id., PageID.443.)

Kathryn Russell, Petitioner's trial counsel, testified that Petitioner did not seem confused during her meetings with him. (Id., PageID.447-448.) It seemed to

her that he comprehended what she was saying to him. (Id., PageId.448.) Petitioner did not seem under the influence of drugs. (Id.) She discussed the plea offer with Petitioner thoroughly, and he seemed to understand what they were talking about. (Id., PageID.449.)

Russell testified that she would not have allowed Petitioner to enter his plea if she thought he was confused. (Id.) In the past, Russell had prevented clients from entering guilty pleas when she questioned their competency. (Id., PageID.450.) In such cases she would ask for a competency evaluation. (Id.) Russell had nineteen years of criminal defense experience dealing with clients. (Id.) Russell never thought that Petitioner had difficulty comprehending what was happening in his case. (Id., PageID.450-451.)

The prosecutor offered a videotape of Petitioner's conduct while in jail, contradicting his testimony that he slept for about eighteen hours a day while on the medication. Instead, it purported to show that Petitioner was not dazed or confused, but that he was getting into arguments and fights while in jail. (ECF No. 9-16, PageID.468.) The video showed that Petitioner became very upset when he returned to jail after sentencing when he learned about the no contact order. (Id.)

Based on the evidence presented at the hearing as well as the plea colloquy, the trial court found that Petitioner understood what he was doing when he entered his no contest plea. (Id. PageID.471-473.) The court found that Petitioner's claim

was simply a product of his "buyer's remorse" when he found out his communication with his family would be limited. (Id.)

Petitioner's appellate counsel thereafter filed a delayed application for leave to appeal in the Michigan Court of Appeals that raised one claim:

> I. As a result of psychotropic drugs administered at the county jail, were no contest pleas not knowingly entered, thus denying Mr. Bos his constitutional rights to due process?

The Michigan Court of Appeals denied the delayed application "for lack of merit in the grounds presented." *People v. Bos*, No. 347038 (Mich. Ct. App. February 21, 2019). Petitioner appealed, but the Michigan Supreme Court denied his application for leave to appeal by form order. *People v. Bos*, 929 N.W.2d 338 (Mich. 2019) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must generally demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. Id. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Analysis

A. Voluntariness of Plea

Petitioner's claims the medications administered to him in jail rendered his plea involuntary, and he claims he was never informed that he would be prohibited from contacting the victim or the victim's mother as a consequence of his plea.

When a criminal defendant is convicted pursuant to a guilty plea (or a plea of no contest) review of his conviction is limited to whether the plea was made knowingly, intelligently, and voluntarily. *United States v. Broce*, 488 U.S. 563 (1989); *Boykin v. Alabama*, 395 U.S. 238 (1969). A plea is voluntary if it is not induced by threats or misrepresentations, and the defendant is made aware of the likely consequences of the plea. *Brady v. United States*, 397 U.S. 742, 755 (1970)).

The plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.*, 397 U.S. at 756.

When a habeas petitioner challenges his plea, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. See *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). "On habeas review, a state court's finding that a plea was valid is a factual finding that is entitled to a presumption of correctness." *Railey v. Webb*, 540 F.3d 393, 417 (6th Cir. 2008).

The state court record reveals that Petitioner's no contest plea was knowing, intelligent, and voluntary. Petitioner's claim that medications altered his mental state to the point that it affected the validity of his plea was fully explored at an evidentiary hearing held in the state court. Petitioner claimed that the medication not only adversely affected his ability to understand proceedings, but it also made him so sleepy that he was sleeping about eighteen hours a day while in jail. The prosecutor presented evidence that this was not true, and that Petitioner was getting in fights and arguments in jail. Petitioner's trial counsel testified at the hearing that she never perceived any difficulty with Petitioner's ability to understand the proceedings, and

that if she had observed any such difficulty, she would have asked for a competency referral. The trial court chose to credit Petitioner's trial counsel's testimony.

Further, nothing in the transcript of the trial court proceeding suggests that Petitioner was suffering from impaired judgment at the time of the plea. While it is true that most of Petitioner's responses to the trial court's questions at the plea proceeding were "Yes" or "No" answers, the trial court found that Petitioner appeared to understand what was taking place and that he gave no indication the proceeding was confusing to him. Moreover, Petitioner made no statements at the sentencing hearing indicating confusion that he had been convicted. Indeed, Petitioner only indicated his dissatisfaction with the plea when he learned of the no contact order.

Accordingly, the trial court's determination that Petitioner's medication did not impact his ability to voluntarily enter his plea was well-supported by the evidence as well as by the record of the plea colloquy. The factual determination that medications did not impair Petitioner's ability to voluntarily enter his plea is presumptively correct on federal habeas review, and Petitioner has not offered clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1).

Petitioner also asserts that he is entitled to withdrawal of his no contest plea because the trial court imposed a no-contact order with respect to the victim and the victim's mother (who was Petitioner's wife), which was not a consequence he was

told about during the plea hearing. Clearly established Supreme Court law requires a court to inform a defendant of all the relevant circumstances and likely consequences of a guilty plea. *Brady*, 397 U.S. at 748. But a defendant need not be informed of every collateral consequences of his plea, and the failure to inform a defendant of collateral consequences does not render a plea involuntary. See *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

Petitioner cites no clearly established Supreme Court case holding that a no-contact order is a consequence of a plea that a defendant must be informed about as a part of a plea proceeding. A no-contact order is, in fact, a collateral consequence of a conviction that need not be communicated to a defendant at the time of the plea hearing. See, e.g., *Bell v. United States*, 2016 WL 7315326 (E.D. Tenn. Dec. 14, 2016).

Accordingly, the court finds that Petitioner has not overcome the presumption of correctness attaching to the trial court's finding that Petitioner entered his guilty plea knowingly, intelligently, and voluntarily. The petition will therefore be denied.

### IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve

encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief because his claims are devoid of merit.

Finally, Petitioner is denied permission to appeal in forma pauperis because any appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

s/Denise Page Hood
United States District Judge

Dated:  July 31, 2020